UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID TUCKER,

        Plaintiff,

Case No. 1:16-cv-165

Hon. Paul L. Maloney

v.

BENZIE COUNTY SHERIFF'S DEPARTMENT
and TED SCHENDEL,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This case involves a dispute between plaintiff, former Benzie County Sheriff's employee David Tucker, and defendants Benzie County Sheriff Ted Schendel ("Sheriff Schendel") and the Benzie County Sheriff's Department ("Sheriff's Department"). This matter is now before the Court on defendants' motion to dismiss (docket no. 4).

    **I.**    **Background**

Plaintiff's original complaint named two defendants, the Sheriff's Department and Sheriff Schendel. Compl. (docket no. 1). The complaint consisted of four claims: Count I (violation of procedural due process against both defendants); Count II (breach of contract against both defendants); Count III (defamation against Sheriff Schendel); and, Count IV (abuse of process against Sheriff Schendel). *Id*. After defendants moved to dismiss the complaint, plaintiff filed a response (docket no. 8) and an amended complaint (docket no. 9). This apparently prompted the parties to enter into a stipulation in which plaintiff "conceded some of Defendant's [sic] arguments, to wit: dismissing Defendant Sheriff's Department from Count I and dismissing Counts III and IV

in their entirety. Plaintiff also added a new Count III for a new defamation claim against Defendant Schendel." Stipulation (docket no. 10). The parties stipulated to allow plaintiff to file the amended complaint "with the proviso that the new Count III for the new defamation claim against Defendant Schendel is dismissed without prejudice." *Id.* The Court approved the stipulation, stating that it "will decide Defendants' Motion to Dismiss regarding Plaintiff's remaining claims." Order (docket no. 11, PageID.311). Defendants' motion to dismiss has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Based on the parties' stipulation, the claims before the Court subject to defendants' motion to dismiss are set forth in the amended complaint as Count I (violation of procedural due process against Sheriff Schendel) and Count II (breach of contract against Sheriff Schendel and the Sheriff's Department).

## II. Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

Defendants have brought this motion pursuant to Fed. R. Civ. P. 12(b)(6), which seeks dismissal for failure to state a claim upon which relief can be granted.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Here, in addition to 54 paragraphs of allegations,

2

plaintiff's amended complaint included a number of attachments related to his claims (docket nos. 9-2 through 9-5). Defendants included a number of attachments in support of their motion to dismiss which were either referenced in the amended complaint, referenced in the attachments to the complaint, or central to the claims raised therein (docket nos. 4-1 through 4-16). Plaintiff's response to the motion included another attachment (docket no. 8-2). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008). Here, in addressing defendants' motion to dismiss, the Court will refer to plaintiff's allegations and all of the related attachments submitted by the parties. *See id.* at 430.

### III. Plaintiff's allegations

Plaintiff was hired by the Sheriff's Department in 1991. Prior to the present dispute, plaintiff had been promoted to sergeant, a union position in the Command Officer's Association of Michigan ("COAM"). Plaintiff served as interim undersheriff under former Benzie County Sheriff Rory Heckman when the previous undersheriff resigned.[1] At the time of this interim appointment,

---

[1] The Court notes that under Michigan Law, a county sheriff must appoint an undersheriff:

> A county sheriff is a constitutional officer, Const 1963, art 7, § 4, whose duties are established by law, MCL 51.68 *et seq.*; *People v. Van Tubbergen*, 249 Mich.App 354, 361; 642 NW2d 368 (2002). One duty of a county sheriff is to appoint an undersheriff. MCL 51.71 ("The sheriff of each county shall . . . appoint some person under sheriff of the same county. . . ."); MCL 45.405 ("The sheriff shall appoint an under-sheriff. . . ."). Because the word "shall" in a statute requires mandatory conduct, *Hughes v. Almena Twp*, 284 Mich.App 50, 62; 771 NW2d 453 (2009), a county sheriff must appoint an undersheriff.

*Schoolcraft County Sheriff's Department v. Schoolcraft County Board of Commissioners*, No. 294815, 2010 WL 2292014 at *2 (Mich. App. June 8, 2010).

3

plaintiff retained the rank and benefits of a sergeant within the union. Sheriff Schendel took office after the 2012 election and retained plaintiff as undersheriff. *See* Amend. Compl. (docket no. 9, PageID.284-286).

Plaintiff's appointment as undersheriff presented a problem. Because the position of undersheriff is a salaried, appointed, executive position, an undersheriff is prohibited from membership in the COAM. Prior to accepting Sheriff Schendel's appointment as undersheriff, plaintiff wanted to retain his seniority in the COAM and the right to "bump" back into the union if he resigned or was removed from the position. To memorialize plaintiff's desire, three "letters of understanding" (LOUs) were prepared.

The first LOU, dated June 28, 2013, is entitled "Letter of Understanding Between Benzie County and Benzie County Sheriff and Command Officers Association Regarding Promotion Outside the Unit to the Position of Undersheriff" ("Bumping Rights LOU") (docket no. 9-3, PageID.300-301). The Bumping Rights LOU stated as follows:

> This Letter of Understanding is entered into this 28 day of June, 2013, between Benzie County and the Benzie County Sheriff (jointly, the Employer) and Command Officers Association of Michigan (Union) regarding rights and interests in the event of promotion outside the unit to the position of Undersheriff.
>
> WHEREAS, there is a collective bargaining agreement between the parties with a term of October 1, 2012, through September 30, 2013; and
>
> WHEREAS, Sheriff Schendel may appoint a member of the Command Bargaining Unit to the position of Undersheriff; and
>
> WHEREAS, the parties desire to clarify the freezing of seniority and accrued and unused benefits and bumping rights under the COAM Contract in the event of such appointment.
>
> THEREFORE, IT IS AGREED AS FOLLOWS:

> 1. It is acknowledged by the parties that the Benzie County Board of Commissioners has set the annual salary for the position of Undersheriff as follows:
>
>    a. Effective January 1, 2013, $50,027
>
>    b. Effective February 15, 2013, $51,000
>
> 2. ~~It is acknowledged by the parties that the position of Undersheriff is a statutory appointed officie which position is not entitled to overtime and that the Benzie County Board of Commissioners has declined to voluntarily pay the position of Undersheriff overtime wages~~. [Initials accompanying strikeout are illegible]
>
> 3. It is acknowledged by the parties that the position of Undersheriff is an appointed Official and as such is not an appropriate member of the Command Bargaining Unit represented by the COAM.
>
> 4. It is acknowledged by the parties that the position of Undersheriff shall receive the same benefits as those approved by the Board of Commissioners and listed in the Non-Union Personnel Manual.
>
> 5. That the vacation and sick time accrued by such member of the Command Unit shall be frozen as of the effective date of appointment to Undersheriff. Any such vacation and sick time accumulations will remain frozen while the employee serves in the position of Undersheriff.
>
> 6. In the event the Sheriff terminates such appointment to Undersheriff and/or the individual appointed to the position of Undersheriff resigns from such position, he shall have retained the seniority accumulated prior to the Sheriffs appointment as Undersheriff and will have bumping rights to return to the COAM Bargaining Unit.

LOU (Bumping Rights). This LOU was signed on behalf of the "County of Benzie" by Donald R. Tanner, Chair Board of Commissioners and, Sheriff Schendel. *Id.* at PageID.301. However, it was not signed by a representative of the COAM, one of the parties named in the LOU. *Id.*

The second LOU is entitled "Letter of Understanding Between Benzie County Sheriff Ted Schendel and David Tucker Regarding Promotion to the Position of Undersheriff" ("Tucker LOU") (docket no. 9-2, PageID.296-297). The Tucker LOU stated as follows:

This Letter of Understanding is entered into this 28 day of June, 2013, between the Benzie County Sheriff Ted Schendel and David Tucker regarding a right of reassignment in the event of David Tucker's return to the COAM Bargaining Unit.

WHEREAS, Sheriff Schendel has offered to appoint David Tucker to the position of Undersheriff; and

WHEREAS, a Letter of Understanding has been executed between Benzie County, the Benzie County Sheriff and the COAM regarding terms and conditions of employment related to a promotion outside the bargaining unit to the position of Undersheriff; and

WHEREAS, David Tucker has requested of Sheriff Schendel assurance that in the event his appointment as Undersheriff is terminated or, alternatively, David Tucker resigns as Undersheriff, that in that instance David Tucker shall have the right to be reassigned to the Road/Law Enforcement Division of the Benzie County Sheriff's Office in the event he exercises his bumping right to return to the Command Bargaining Unit pursuant to the terms of the above Letter of Understanding; and

WHEREAS, Sheriff Schendel desires to provide assurance to David Tucker that in such event Sheriff Schendel agrees to exercise his right of assignment to reassign Tucker to the Road/Law Enforcement Division of the Benzie County Sheriff's Office.

**THEREFORE, IT IS AGREED AS FOLLOWS**:

1. In consideration of David Tucker's agreement to resign from his position in the COAM Bargaining Unit and his current assignment to the Road/Law Enforcement Division of the Benzie County Sheriff's Office to accept the Non-Union Management position of Undersheriff, Sheriff Schendel agrees and commits that he will exercise his right of assignment as Sheriff of the Benzie County Sheriff's Office to reassign David Tucker to a position in the Road/Law Enforcement Division of the Benzie County Sheriff's Office in the event David Tucker is either involuntarily terminated by Sheriff Schendel from the position of Undersheriff or, alternatively, in the event David Tucker voluntarily resigns from the position of Undersheriff.

2. It is understood and agreed between the parties that Sheriff Schendel's commitment to reassign David Tucker to Road Patrol is conditioned upon sufficient seniority by David Tucker to bump back into the COAM Bargaining Unit.

3. It is agreed and understood between the parties that Sheriff Schendel's commitment to reassign David Tucker to Road Patrol is conditioned upon and assumes that a Road/Law Enforcement Division exists in the Benzie County Sheriff's

>Office at such time as David Tucker may bump back into the COAM Bargaining Unit.

Tucker LOU at PageID.296-297. This LOU was signed by both "Benzie County Sheriff Ted Schendel" and the "Employee" David Tucker. *Id.* at PageID.297. Although not referenced in the Tucker LOU, the exhibit filed in this Court included an attachment entitled "Accrual as of 6/23/13 Frozen per LOU." *See* Accrual document (docket no. 9-2, PageID.298). The accrual document is signed by Tucker, dated June 28, 2013, and appears to list his accrued vacation time, sick time, personal time and comp time as of that date. *Id*.

A third LOU is on COAM letterhead, and entitled "Letter of Understanding Between Benzie County Board of Commissioners and Sheriff of Benzie County and Command Officers Association [sic] of Michigan (COAM) RE: Undersheriff - Retain Benefits Return to Unit" ("Benefits LOU") (docket no. 9-4, PageID.303). The Benefits LOU is undated and states as follows:

>The parties to this Letter hereby agree to the following:
>
>If David Tucker accepts the appointment to the position of Undersheriff the following shall apply; David Tucker shall retain COAM contractual benefits, and shall be allowed to return back to the COAM bargaining unit at any time during the term of the current Benzie County Sheriff. If David Tucker returns to the COAM bargaining unit he shall not lose any seniority he had prior to the appointment and will be assigned to the Road/Law Enforcement Division of the Benzie County Sheriff's Office.

Benefits LOU at PageID.303. This LOU is signed on behalf of the COAM by Dan Kuhn, Business Agent, on behalf of the Benzie County Command Officers Association ("BCCOA") by its president, David Tucker, and by Sheriff Schendel. *Id.* However, this LOU was not signed by one of the named parties, the Benzie County Board of Commissioners. *Id.*

Plaintiff set forth additional allegations as follows. After appointment as the undersheriff, plaintiff served ably and to the best of his ability. Like other employees of the Sheriff's Department, he had dual employment with the consent of Sheriff Schendel. In his case, plaintiff was employed "in security" with Cherry Growers, Inc., located in Grawn, Michigan. Amend. Compl. at PageID.287.

On or about March 30, 2015, after learning that Sheriff Schendel was seeking to terminate plaintiff's employment regarding "an inadvertent timekeeping discrepancy," plaintiff resigned from the position of undersheriff, and pursuant to the LOUs, sought to exercise his "bumping rights" to return to the COAM bargaining unit. However, Sheriff Schendel refused to permit plaintiff to return to the COAM bargaining unit, and placed him on administrative leave. *Id.*

On or about April 1, 2015, Sheriff Schendel communicated with the Michigan State Police ("MSP") to seek criminal prosecution against plaintiff. According to plaintiff, Sheriff Schendel "related to the MSP an allegedly anonymous allegation he had received regarding Plaintiff, that he was 'claiming work time at the Sheriff's Department while simultaneously working his secondary job at Cherry Growers'" and "asked that the MSP investigate and requested prosecution of Tucker for 'Wilful Neglect of Duty' or embezzlement." *Id*.

The allegations of criminal conduct arose from plaintiff's activities on October 31, 2014, when Sheriff Schendel was on vacation and plaintiff was acting Sheriff. *Id*. at PageID.287-288.[2] According to plaintiff, the practice at the Sheriff's Department was that an administrative assistant would turn in plaintiff's hours and that plaintiff would never sign his time sheets.

---

[2] *See People v. Bommarito*, 33 Mich. App. 385, 388, 190 N.W.2d 359, 361 (1971) ("[t]he undersheriff is required by statute [M.C.L. § 51.73] to take the same oath of office as the sheriff and he has the same duty to obey and enforce the laws of this state").

Specifically, he did not sign the time sheet in question for October 31, 2014, and there was no evidence that he reviewed the time sheet before it was turned in.  Plaintiff also alleged that Sheriff Schendel "actually reviewed, approved and signed Plaintiff's time sheet for the period in question" and that plaintiff was paid for the disputed date of October 31, 2014.  A local newspaper, the *Benzie Record Patriot*, reported that on April 7, 2015, Sheriff Schendel was quoted as saying of plaintiff that "If he was working there [at Cherry Growers], and, at the same time, claiming time spent there as time spent working for Benzie, then it would be embezzlement," and that  "It is criminal activity. It is also morally, and ethically, wrong."  *Id*. at PageID. 288.

On April 8, 2015, Sheriff Schendel changed plaintiff's status from paid suspension to unpaid suspension effective April 9, 2015.  Given this situation, i.e., unpaid status and being refused his "bumping rights" back into COAM, plaintiff needed income, so he exercised his right to retire from the Sheriff's Department.  Plaintiff submitted his retirement on April 23, 2015, with an effective date of May 31, 2015.  *Id*.

During the time period that plaintiff was suspended prior to  his retirement (i.e., March 30, 2015 through May 31, 2015), the MSP performed a thorough investigation of the incident, generating a 103-page police report.  The MSP's investigation was assigned to a special prosecutor, Leelanau County Assistant Prosecutor Douglas J. Donaldson, who declined to authorize the issuance of an arrest warrant.  On or about June 9, 2015, Special Prosecutor Donaldson stated in pertinent part:

   1.   The administrative procedure for reporting hours is done automatically and usually not reviewed by most employees.  There is insufficient evidence to show that Mr. Tucker intentionally reported his hours or reviewed those hours.

> 2. Mr. Tucker's personnel file has revealed years of commendations, training, and personal notes expressing gratitude for his professionalism and hard work. The file tends to show the credibility of Mr. Tucker and his version of events.

*Id*. at PageID.288-289.

The *Benzie Record Patriot* published an article on June 23, 2015 reporting that the prosecution was declined. The article included a statement from Sheriff Schendel that the MSP "found probable cause to charge Tucker, and referred the matter to the Leelanau County prosecutor, who declined to file charges." Plaintiff takes issue with the Sheriff's public statement that the MSP made a determination of probable cause, noting "[t]hat is a function of a prosecuting official, who in this case, did not find probable cause and declined to prosecute plaintiff." *Id*. at PageID.289. Several months later, on April 27, 2016, Sheriff Schendel "reiterated his false statement that the state police contending state police [sic] found probable cause to believe Tucker neglected his undersheriff duties" in another newspaper, the *Traverse City Record-Eagle*. *Id*.

## IV. Discussion

### A. Summary of plaintiff's claims

In Count I of the amended complaint, plaintiff alleged that Sheriff Schendel violated his procedural due process rights guaranteed by the Fourteenth Amendment. Specifically, (1) that plaintiff had a contractual right to return to the COAM bargaining unit where he could not by terminated except for just cause under Article 10.2 of the union's collective bargaining agreement (CBA), (2) that his "contractual right" was "a property right in his employment under the 14th Amendment," and (3) that Sheriff Schendel violated this constitutional right by: terminating his employment as undersheriff; suspending him without pay; publicly and falsely accusing him of

criminal activity without legal basis; depriving plaintiff's right to "bump" back into the COAM by failing to place him back into the unit as agreed; and, depriving him of an opportunity to file a Union grievance to challenge these adverse employment actions. *Id.* at PageID.290. Plaintiff further alleged that he was without adequate state remedies to address this deprivation. *Id.*

In Count II of the amended complaint, plaintiff set forth a related claim for breach of contract against both Sheriff Schendel and the Sheriff's Department. Specifically, (1) that plaintiff "had a guaranteed written contractual right to return to the COAM bargaining unit whether he resigned or was terminated as undersheriff"; (2) that Sheriff Schendel and the Sheriff's Department breached the contract by refusing to return plaintiff to the COAM bargaining unit; and (3) that the breach of contract: was without justification; has damaged plaintiff; and entitles plaintiff to special relief including monetary damages and "declaratory, injunctive, and/or other prospective relief." *Id.* at PageID.291-293.

### B. Plaintiff's Breach of contract claim

Plaintiff has alleged that he had a "a contractual right to return to the COAM bargaining unit."

> In Michigan, the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Detroit Trust Co. v. Struggles*, 289 Mich. 595, 286 N.W. 844 (1939). Mere discussions and negotiations cannot be a substitute for the formal requirements of a contract. *Kirchhoff v. Morris*, 282 Mich. 90, 95, 275 N.W. 778 (1937).

*Thomas v. Leja*, 187 Mich. App. 418, 422, 468 N.W.2d 58 (1991).

Here, there was no contract between plaintiff and defendants Sheriff Schendel and the Sheriff's Department that could be breached or serve as the basis for a procedural due process

claim. First, there is no allegation that the Sheriff's Department was a party to a contract or a party to any of the LOUs upon which plaintiff relies to support his claim. *See* Discussion,§ III, *supra*.

Second, even if the Sheriff's Department signed a contract or any of the LOUs regarding plaintiff's continued employment, that department was not a proper party to this litigation. Michigan Courts have recognized "that a sheriff and the sheriff's employees, colloquially known as a 'sheriff's department,' are 'a distinct part of a governmental organization [.]'" *Leelanau County Sheriff v. Kiessel*, 297 Mich. App. 285, 296, 824 N.W.2d 576 (2012), citing *Ellis v. Common Council of Grand Rapids*, 123 Mich. 567, 569, 82 N.W. 244 (1900). However, "[t]he sheriff's department does not exist as a separate legal entity; it is simply an agent of the county." *Burnett v. Chippewa County Sheriff Department*, No. 206-cv-164, 2007 WL 2463226 at *3 (W.D. Mich. Aug. 28, 2007), citing *Vine v. County of Ingham*, 884 F.Supp. 1153, 1158 (W.D. Mich.1995) (citing *Hughson v. County of Antrim*, 707 F.Supp. 304, 306 (W.D.Mich.1988) and *Bayer v. Almstadt*, 29 Mich.App. 171, 185 N.W.2d 40, 44 (1970)).").[3] This is reflected in the manner in which the LOUs were drafted. None of the LOUs were to be executed by the Sheriff's Department. Rather, the LOUs which required the signature of a governmental agency required the signature of a representative for Benzie County. *See generally, Police Officers Association of Michigan v. Oakland County*, 135 Mich. App. 424, 428, 354 N.W.2d 367 (1984) (union representing employees of the Oakland County Sheriff's Department entered into a collective bargaining agreement with the Oakland County Sheriff and the

---

[3] The Court notes that a recent panel of the Michigan Court of Appeals stated in an unpublished opinion that *Bayer* was not binding precedent on that court pursuant to MCR 7.215(J)(1), and that a sheriff's department was an "agent of an employer" (i.e., the county) for purposes of Michigan's Whistleblower's Protection Act (WPA). *See Dennis v. Wexford County Sheriff's Department*, No. 325574, 2016 WL 3184482 at *8-9 (Mich. App. June 7, 2016). While the *Dennis* decision is distinguishable from the present case (which does not involve a claim under Michigan's WPA), the decision reaffirms that employees of a sheriff's department are employed by the county, not the sheriff's department.

Oakland County Board of Commissioners). In summary, the Sheriff's Department did not sign any of the LOUs, and even if it did, the department could not enter into a binding agreement as an entity separate and distinct from Benzie County.

Furthermore, plaintiff's allegations and attachments do not establish that plaintiff had a contract regarding his continuing employment. In support of his claim, plaintiff has presented the three LOUs in an attempt to cobble together such a contract. However, for the reasons discussed below, mutuality of agreement and obligation are lacking. *See Detroit Trust Co.*, 289 Mich. at 599. "[A] fundamental tenet of all contracts is the existence of mutual assent or a meeting of the minds on all essential terms of a contract." *Burkhardt v. Bailey*, 260 Mich. App. 636, 655, 680 N.W.2d 453 (2004). *See Oasis Oil, L.L.C. v. Michigan Properties, L.L.C.*, No. 306700, 2013 WL 6083715 at *2 (Mich. App. Nov. 19, 2013) ("[m]utual assent or mutuality of agreement requires an offer and acceptance"). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Calhoun County v. Blue Cross Blue Shield Michigan*, 297 Mich. App. 1, 13, 824 N.W.2d 202 (2012). In addition, because "mutuality of obligation means that both parties to an agreement are bound or neither is bound," *Domas v. Rossi*, 52 Mich. App. 311, 315, 217 N.W.2d 75 (1974), "a contract lacks mutuality when one party is obliged to perform, but not the other," *Jaye v. Tobin*, 42 Mich. App. 756, 760, 202 N.W.2d 712 (1972). (internal quotation marks omitted).

Here, the alleged contract involved promises by five interested parties: plaintiff David Tucker; defendant Sheriff Schendel; Benzie County; the COAM; and, the BCCOA. However, there is no document, or collection of documents, which reflect that these five parties reached mutuality of agreement or a "meeting of the minds" on all of the essential terms of a contract. Nor was there

mutuality of obligation between the five parties. As discussed in § III, *supra*, different parties signed different LOUs containing different provisions, and some of the parties apparently refused to sign LOUs to which they were to be bound. First, the Bumping Rights LOU only contained promises by Benzie County, Sheriff Schendel, and the COAM. However, COAM promised nothing because it did not sign the LOU. In addition, neither plaintiff nor the BCCOA were parties to this LOU. *See* Bumping Rights LOU at PageID.300-301.

Second, the Tucker LOU only contained promises by plaintiff and Sheriff Schendel. Neither Benzie County, the COAM, nor the BCCOA were parties to this LOU. *See* Tucker LOU at PageID.296-298. Furthermore, the Tucker LOU was based in part on a non-existent fact, i.e., that "a Letter of Understanding has been executed between Benzie County, the Benzie County Sheriff and the COAM regarding the terms and conditions of employment related to a promotion outside the bargaining unit to the position of Undersheriff." *Id*. at PageID.296.

Third, the Benefits LOU only contained promises by the COAM, the BCCOA, Sheriff Schendel, and Benzie County. However, Benzie County promised nothing because it did not sign the LOU. While plaintiff was not a party to this LOU, the Court notes that a "David Tucker" signed as the President of the BCCOA. Benefits LOU at PageID.303.

In summary, there was no agreement reached between plaintiff, Sheriff Schendel, Benzie County, the COAM, and the BCCOA regarding plaintiff's continued employment in the event that he either voluntarily or involuntary left the position of undersheriff. Rather, the various documents presented by plaintiff reflect "[m]ere discussions and negotiations" between five different parties which "cannot be a substitute for the formal requirements of a contract." *Thomas*, 187 Mich.

App. at 422. Accordingly, plaintiff's breach of contract claims against defendants Sheriff Department and Sheriff Schendel should be dismissed.

### C. Plaintiff's procedural due process claims

Finally, plaintiff's procedural due process claim fails because he was not deprived of a protected interest. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

In his § 1983 claim, plaintiff contends that Sheriff Schendel violated his procedural due process rights under the Fourteenth Amendment, which prohibits states from depriving "any person of life, liberty, or property, without due process of law." "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009) (internal quotation marks omitted).

Courts employ a two-step analysis in evaluating a violation of due process rights. "First, we determine whether the claimant has a property interest that entitles him to due process protection." *Relford v. Lexington-Fayette Urban County Government*, 390 F.3d 452, 460 (6th Cir. 2004). "Second, if the claimant has such an interest, this Court must determine what process is due."

*Id.* (internal quotation marks omitted). With respect to the first step, government employees may have a property right in their continued employment under state law. *Id.* Here, all of plaintiff's due process claims arise from such a property interest, i.e., the alleged contract for continued employment as set forth in ¶¶ 35- 50 of his amended complaint:

> 35. Plaintiff was a government employee who was guaranteed continued employment as Undersheriff contractually, with the right to "bump" back into the COAM "in the event David Tucker is either involuntarily terminated by Sheriff Schendel from the position of Undersheriff or, alternatively, in the event David Tucker voluntarily resigns from the position of Undersheriff."
>
> 36. With this contractual right to return to the COAM bargaining unit, where he enjoyed protection as an employee under the CBA who could not be terminated except for just cause (Article 10.2), Plaintiff had a property right in his employment under the 14th Amendment of the U.S. Constitution.
>
> 37. Defendant Schendel deprived Plaintiff of his constitutional property right to continued employment by terminating his employment as Undersheriff, depriving him of his right to bump into the COAM bargaining unit, suspending him without pay, and publicly and falsely accusing him of criminal activity without legal basis, and otherwise as alleged above.
>
> 38. The actions described above amounted to a constructive discharge.
>
> 39. Defendant refused to provide Plaintiff with any process to contest these actions, and by depriving him of his right to "bump" back into the COAM by failing to place him back into that unit as agreed, also deprived him of an opportunity to file a formal Union grievance challenging these adverse employment actions; therefore he was without adequate state remedies to address this deprivation.
>
> 40. As such, Defendants deprived Plaintiff of his constitutional property right to continued employment without due process of law, by depriving him of both pre- and post-termination procedures.

Amend. Compl. at PageID.290.

For the reasons discussed in § IV.B., *supra*, there was no contract for continuing government employment which could serve as a property interest that entitled plaintiff to due process protection. *Relford*, 390 F.3d at 460. Accordingly, plaintiff's procedural due process claim fails.

## V. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion to dismiss (docket no. 4) be **GRANTED** and that this matter be **DISMISSED**.

Dated: January 30, 2017            /s/ Ray Kent
                                                  RAY KENT
                                                  United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).